UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-61853-CV-WPD

PAUL B. TARTELL, M.D.,

    Plaintiff,

v.

SOUTH FLORIDA SINUS AND ALLERGY
CENTER, INC., LEE M. MANDEL, M.D., INC.,
Florida corporations, and
LEE M. MANDEL, M.D., individually,

    Defendants.

_____

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff, Paul B. Tartell, M.D., pursuant to this Court's discovery order (D.E. 43), Fed. Civ. P. 37, and S.D. Fla. L.R. 7.1 and 24.1(h)(2), respectfully moves this Court for an order compelling Defendants, South Florida Sinus and Allergy Center, Inc., Lee Mandel, M.D., Inc., and Lee M. Mandel, M.D., to produce documents in response to Plaintiff's Second Request for Production, and awarding Plaintiff reasonable expenses, including attorneys' fees, in making this motion, and as grounds therefore state:

### Background Pertinent to this Motion

As set forth in the Court's Order Granting Motion for Preliminary Injunction (D.E. 36), Defendant Mandel cybersquatted on variations of Dr. Tartell's trademark-protected name (the "Tartell Marks") and created a likelihood of confusion among patients and others by registering six Tartell Domains, namely paultartell.com, paultartellmd.com, ptartell.com, tartell.net,

paultartell.net, and paultartellmd.net. names. Notably, Defendant Mandel did not register a domain of his own name; only Dr. Tartell's. Specifically, the Court found:

> A computer user who typed in the internet address to the sites Dr. Mandel registered, or who managed to find these sites through a web search and then clicked on a link bearing a web address Dr. Tartell's name, would reasonably expect to arrive at a site describing and advertising Dr. Tartell's services. They would not. Instead, they would be automatically redirected to the SFSAC website. Unless particularly diligent, that user may not realize that they were engaging with the wrong doctor.

Injunction Order, D.E. 36, p. 10.

In addition, Defendant Mandel engaged in an adword compaign with Google and Yahoo! Whereby he utilized the Tartell Marks to drive internet traffic to the sfsac.com website, which he has usurped from the parties' LLC.[1]

Notably, while Defendant Mandel has steadfastedly denied that he created the domain forwarding that automatically redirected the Tartell Domains to the SFSAC website, records recently received from GoDaddy prove that Defendant Mandel's denials, including those made to the Court at the injunction hearing, were patently false. *See, e.g.,* GD 000158-000159, records produced by GoDaddy reflecting "domain forwarding" of the Tartell Domains in March 2012, GD 000152 reflecting "domain forwarding delete" in September 2012, and GD 000145 reflecting Defendant Mandel's inquiry to GoDaddy in September 2013 concerning his domain forwarding (attached as **Exhibit A**).

### New Patient Logs and Intake Forms

Defendant Mandel has argued in this case that Dr. Tartell has no evidence proving the Court's concern, quoted above, that computer users who typed in any of the Tartell Domains or managed to find these sites through a web search expecting to arrive at a site describing and

---

[1] Defendant Mandel's usurpation of the SFSAC website is the subject of an ongoing state arbitration proceeding.

advertising Dr. Tartell's services were instead automatically redirected to the SFSAC website maintained (wrongfully) by Defendant Mandel. While finding direct evidence that patients were actually confused in this manner is a difficult task, it is being made more difficult because Defendant Mandel is hindering Dr. Tartell's ability to do just that.

Specifically, in response to Dr. Tartell's Second Request for Production Nos. 8 and 10 (attached hereto as **Exhibit B**), Defendant Mandel produced logs maintained by his office staff during the time that the Tartell Domains were automatically being redirected to the SFSAC website reflecting how patients were referred to the practice. The logs reflect that 31 patients were referred to Defendant Mandel through the "Web," and this includes 3 patients who were referred as a result of a Google search. *See, e.g.,* DEF0913130001, which is an example of what the logs look like, attached as **Exhibit C**.

In addition, Defendant Mandel produced all of his New Patient Intake Forms, which reflect that between March and September 2012, 78 patients were referred to his practice as a result of the "Web." *See, e.g.,* DEF00913120072, which is an example of one such form, attached as **Exhibit D**.

The problem, however, is that Defendant Mandel has redacted the patient identities and contact information both from the Logs and the New Patient Intake Forms, making it impossible for Dr. Tartell to prove that these patients were in fact referred to Defendant Mandel because they typed in one of the Tartell Domains or managed to find these sites through a web search expecting to arrive at a site describing and advertising Dr. Tartell's services, but were instead automatically redirected to the SFSAC website.

Defendant Mandel's position is that he is concerned that disclosure of this information would implicate patient privacy laws. However, Dr. Tartell is not seeking any medical

information about these patients. He merely seeks to establish that they were referred because of Defendant Mandel's misconduct, described above and in the Injunction Order. In any event, the Court can easily place a confidentiality restriction on the use of this information so that it is used only for this limited purpose.

Defendant Mandel also argues that establishing direct evidence of patient confusion is not necessary because Dr. Tartell seeks to recover statutory and not actual damages. But statutory damages only apply with respect to Defendant Mandel's cybersquatting misconduct under 15 U.S.C. § 1125(d), and not to his trademark infringement under 15 U.S.C. § 1125(a), including his wrongful use of the Tartell Marks in adwords to drive internet traffic to the SFSAC website.[2] In any event, establishing that at least some patients were confused because they were automatically redirected to the SFSAC website when typing in a Tartell Domain or searching a Tartell Mark will likely enhance a statutory damage award. At the very least, it would be unfair and prejudicial for Defendant Mandel to hinder this discovery while at the same time arguing at trial that there is no evidence that any patient was automatically directed.

For the foregoing reasons, Dr. Tartell requests that this Court Order Defendant Mandel to furnish unredacted New Patient Logs and Intake Forms revealing the identities and contact information for the patients who were referred through the "Web" or "Google." We have identified a total of 109 patients who were referred through the "Web," including 5 patients referred through Google. Dr. Tartell specifically requests that unredacted copies of the following bate stamped documents be produced: DEF0913130001-07; DEF0913130052-72; and DEF0913130266-312. Defendant Mandel also seeks to avoid production of these documents

---

[2] While the Court expressed reservation at the early stages of the case about whether use of the Tartell Marks in adwords constitutes trademark infringement, the Court acknowledged that the ultimate finder of fact may disagree. Injunction Order, D.E. 36, at 14.

asserting that none of his employees affirmatively indicated that "Web" means the SFSAC website. However, that is exactly the point of this discovery: to ascertain exactly how these patients were referred to Defendant Mandel's medical practice and whether, as the Court expressed in the Injunction Order, they were referred as a result of typing in the Tartell Domains or searching the Tartell Marks on the web.

Based on the foregoing, Plaintiff respectfully requests that this Court grant its Motion to Compel and require Defendants' to provide unredacted documents responsive to Requests Nos. 8 and 10, and further require that Defendant reimburse Plaintiff for the expense, including its attorney's fees, associated with the preparation of this Motion and related proceedings.

Dated this 25th day of September, 2013.

By: ___s/Tara Ravi___
MATTHEW S. NELLES, Trial Counsel
Fla. Bar No.: 009245
mnelles@broadandcassel.com
TARA RAVI
Fla. Bar No.: 72641
travi@broadandcassel.com
**BROAD AND CASSEL**
One Financial Plaza, Suite 2700
Ft. Lauderdale, FL  33394
Telephone:  (954) 764-7060
Facsimile:  (954) 713-0987
*Attorneys for Plaintiff*

## Certificate of Conference

Pursuant to Local Rule 7.1(a)(3), the undersigned has conferred with Plaintiff's counsel via telephone conference in a good faith effort to resolve the issues in this motion but has been unable to do so.

/s/Tara Ravi

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 25, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel/parties of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

By:   s/Tara Ravi
Tara Ravi