UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-61853-CV-WPD

PAUL B. TARTELL, M.D.,

     Plaintiff,

v.

SOUTH FLORIDA SINUS AND ALLERGY
CENTER, INC., LEE M. MANDELL, M.D., INC.,
Florida corporations, and
LEE M. MANDEL, M.D., individually,

     Defendants.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants, South Florida Sinus and Allergy Center, Inc., Lee M. Mandel, M.D., Inc.,

and Lee M. Mandel, M.D. (collectively "SFSAC" or "Defendants"), respectfully moves for the

entry of summary judgment against Plaintiff, Paul B. Tartell, M.D., ("Tartell" or "Plaintiff").

## BACKGROUND

Plaintiff brought this action for alleged use of Tartell's name in domain names, as a

Google AdWord and in metatags. DE 1. The evidence at trial will show that the domain names

were cancelled the day the complaint was served. Although the Court ultimately did not

preliminary enjoin the use of Tartell among the Google Ads words, Defendants nevertheless

dropped it. DE 36, p. 6. Defendants have repeatedly tried to resolve the case with Plaintiff in

view of the fact that the relief sought was effectively achieved from the onset. Yet, Plaintiff

persists--ostensibly for damages, which is his right, but it comes with the obligation to present

substantial evidence to prove his claims.

To read the Complaint and the testimony of Dr. Tartell at the Preliminary Injunction hearing, one would expect the allegations to be supported by substantial evidence by trial and therefore likely to succeed.  Now that discovery has closed, it is clear however that Dr. Tartell has not met his responsibility as a plaintiff to provide such substantial, admissible, corroborating evidence but chooses rather to rely on his own self-serving conclusory statements and the anecdotal unsubstantiated statements (virtually identical in language to that of Tartell and his complaint) of two doctor friends.

Plaintiff has asserted five separate claims against Defendants: false designation of origin in violation of 15 U.S.C. § 1125(a), cybersquatting in violation of 15 U.S.C. § 1125(d), false advertising in violation of 15 U.S.C. § 1125(a), unauthorized publication of name and likeness in violation of Florida Statute § 540.08, and unfair competition under Florida common law.

Because it is a threshold and dispositive issue for which there are no genuine issues of material facts, this motion seeks summary judgment because Plaintiff has failed to present substantial admissible evidence to support a high degree of proof that his name is more than just his name but has acquired second meaning as mark for his medical services.  Further, Plaintiff has provided no evidence that Defendants visually displayed his name or likeness, so there is also no basis to proceed to trial on the right of publicity claim under Florida Statute § 540.08.

Although serious questions of proof also exist about Plaintiff's claim that Defendants linked the Tartell domains to the sfsac.com website, this issue has highly disputed facts and is not presented for summary judgment.  However, because the alleged link of the Tartell domains to the sfsac.com appears to have been a factor in granting the preliminary injunctive relief and may raise a question of why Defendants would link to a domain name that has no consumer recognition, it bears noting that, now that discovery has closed, Plaintiff has failed to provide any

admissible evidence to support his testimony that the Tartell domain names were in fact linked to sfsac.com.

A central allegation in the complaint, reiterated by Tartell with no documentary proof, is that Defendants not only registered the Tartell names but also linked them to the sfsac.com website to drive patients looking for Tartell to the website and then onto Defendants' practice. Dr. Tartell was taken at his word without supporting documentary evidence preliminarily by the court. DE 36. The Court's Order stated, for example, "Visiting one of those sites would redirect the visitor to the SFSAC website, which was now in Dr. Mandel's control." DE 36 at 5.

Now that discovery is closed, it is clear that Tartell has failed to support these allegations. When Tartell was deposed at the end of discovery on Sept 4, 2013, he admitted he had no evidence to support his testimony that he personally typed in the Tartell domains and linked to sfsac.com. Exhibit 5, Tartell Deposition, 28:15 – 33:8. He did not document his experience. Id. Plaintiff sought records from Domains By Proxy, eNom and Televox, the website host, and yet found no evidence of the alleged linking. Composite Exhibit 9, subpoenas to Domains By Proxy, eNom and Televox. Defendants pointed this out and urged Plaintiff to resolve the matter with an agreement not to use Tartell's name as complained off, but Plaintiff persists.

At the very end of discovery, Plaintiff obtained documents and a deposition from GoDaddy that registered the Tartell domain names. Exhibit 10, Deposition Transcript of Keena Willis, Go Daddy and produced documents GD 150, 159 and 187. Plaintiff has tried to use the unqualified paralegal to testify that log notes on the day the Tartell domains were registered show that Defendants instructed a "domain forwarding update." Exhibit 10, 4:20-5:4, 69:8-70:18, 66:15-68:9 and attached GD 150, 159 and 187. Interestingly, the records and deposition show the same day, the "domain forwarding" was between two GoDaddy internal sites—not any

link to any sfsac.com which is hosted elsewhere by Televox.  Id.  This evidence is inadmissible and does not show any link to Defendants' sfsac.com website.

Plaintiff who has the burden has not provided any expert analysis or opinion on the linking evidence and instead intends to rely on the unreliable, unqualified, hearsay testimony of a records custodian paralegal.  While Defendants do not have the burden of proving no link, they nevertheless have--by providing the expert report of a computer forensic expert Victor Johnson, who not only reviewed and rejected the GoDaddy "evidence" but more reliably reviewed the evidence from the opposite direction, i.e. from the sfsac.com website history, and determined that there is no evidence of any link between the website and Tartell domains.  Exhibit 11.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990).  Summary judgment is mandated by Federal Rule of Civil Procedure 56(c) if the party bearing the burden of proof at trial fails to establish an essential element of its claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The court must draw every inference in favor of the non-moving party when considering pleadings, depositions, answers to interrogatories, admissions on file and any affidavits of record and determining whether a genuine issue of material fact exists. *Allen v. Board of Public Educ. For Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). However, "[a] factual dispute alone is not enough to defeat a properly pled motion for summary judgment, only the existence of a genuine issue of material fact will preclude grant of summary judgment." *Id.* The Plaintiff has the burden of sustaining a high degree of proof in establishing secondary meaning and the court must consider this high degree of proof when ruling on a motion for summary judgment. *See*

*Investacorp, Inc. v. Arabian Inv. Banking Corp (Investcorp) E.C.*, 931 F.2d 1519, 1525 (11th Cir. 1991).

**ARGUMENT**

A.     **Plaintiff's Evidence**

Discovery has ended and we can now review all the evidence that Plaintiff presents to meet the high degree of proof that his name has acquired distinctiveness as a trademark for his services.   Before we review what Plaintiff presents, we should note what is conspicuously absent.

Significantly, Plaintiff provides no survey evidence, no marketing or branding expert analysis or opinions, no evidence of television, radio or other public appearances, no lectures or public speeches related to his services in the past twenty years, no media coverage of Plaintiff or his practice, no commercial articles, publications or other writings directed to the consuming public related to his practice. There is no evidence of an internet website still today and no internet advertising by Plaintiff.  Nor is there evidence of trademark registrations or application and no advice to public of trademark claims using the tm or sm designation next to his name.

Rather than making efforts to promote his name as a mark, Plaintiff does not believe in advertising or marketing, and acquiesced to Dr. Mandel's advertising and marketing when they practiced together, including the emphasis on the brand SOUTH FLORIDA SINUS AND ALLERGY CENTER and its SFSAC and nose logo to "almost the exclusion of the doctors that staffed it."  UF 71, 72. ("UF" used hereinafter is citation to the Undisputed Fact in Defendants' Statement of Material Facts in Support of Their Motion for Summary Judgment).

Plaintiff has had almost a year to substantiate with corroborating, admissible evidence the assertions he made to this Court during the preliminary injunction stage of the case, but the evidence proffered falls woefully short of establishing a high degree of proof that he has

acquired secondary meaning in his name.  Plaintiff made a number of assertions in support of the preliminary injunction motion and the Court found that he "had used his name in South Florida to advertise his skill and ability as an ENT for nearly twenty years." DE 36 at 8.   However, Plaintiff has not provided even one piece of advertisement that displays solely his name with his services over those 20 years. Further, the Court wrote that Plaintiff, "[p]rior to joining with Dr. Mandel, ...spent several years building the public's association of his name to his skill as a doctor.   He gave lectures in his field, issued advertising related to his lectures, and practiced as a doctor." DE 36 p. 8.   Yet, now through discovery, Plaintiff has admitted that he only worked as a solo practitioner for 18 months. UF 51. After that year and a half, he joined another practice as an employee (UF 52) and immediately after that experience, he joined with Dr. Mandel and together held out their practice as the Head and Neck-Facial Plastic Surgery Associates of South Florida. UF 54.   Plaintiff alleged he lectured widely when he first came down to South Florida. It turns out that he gave some dozens of lectures to community organizations like women's clubs and churches for about a year and felt his name was "out there enough" and stopped. UF 6; UF 29. So for the last twenty years, he has not lectured at all, much less "lectured widely."  No documents have been produced to evidence these alleged efforts.  None of this evidence presents a high degree of proof of trademark use of his name sufficient to establish acquired secondary meaning in a surname.

Plaintiff alleged publications are directed to an academic audience.   UF 41. Plaintiff admits that practitioners may or may not have read his articles, and he has not produced any evidence that any fellow practitioner in South Florida ever read one of his published articles. UF 49.  Further, Plaintiff admits that his articles are too technical for a patient to understand, which strongly indicates that his potential consumers, patients, failed to associate his name with his expert articles. UF 50.

Plaintiff did not establish secondary meaning for his name as a mark before joining with Dr. Mandel in 1998.  Any consumer recognition he might have developed from his one year of talks would have been lost during his employment with Dr. Maliner, during which he presents no evidence of efforts to maintain consumer recognition for his name as a mark.

During the years Plaintiff practiced with Dr. Mandel, first as a PA and then the LLC, Plaintiff relies on the marketing undertaken by that entity.  However, there is no proof that his name was ever used by itself to promote Plaintiff's services, which is necessary to demonstrate trademark rights in his name alone.   Further, the evidence demonstrates that the use of both the Tartell and Mandel names were almost always diminutive in size as compared to the LLC name under the more prominent South Florida Sinus and Allergy Center and SFSAC marks. UF 34. Plaintiff even admits that he **acquiesced** to the increased emphasis on the SFSAC mark and deemphasizing the use of the individual doctor names on advertising and promotional materials "almost to the exclusive of the doctors staffing it") UF 71.  None of this use demonstrates that Plaintiff acquired secondary meaning in his name alone.   If any rights were acquired it inured to the LLC  and Plaintiff has presented no evidence that these rights were transferred to him.

When he split in June 2011, he started over in developing consumer recognition for his name as a mark.  Yet, he chose instead to minimize advertising and continue to use the LLC brand as his dominant mark.  UF 75-77.

## A.  Plaintiff's Trademark Claims

To prevail on the Lanham Act claims, including the claim under § 1125(d) for cybersquatting, and the unfair competition claim, plaintiff must first establish protectable trademark rights in his name and then prove that those rights were violated by Defendant depending on each separate cause of action. *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997); *Salle v. Meadows*, 2007 WL 4463920

(M.D. Fla. Dec. 17, 2007); *see also Shields v. Zuccarini*, 254 F.3d 476, 483 (3rd Cir. 2001);

*Investacorp, inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th

1991).   15 U.S.C. 1125(d) provides, "A person shall be liable in a civil action by the owner of a

mark, including a personal name **which is protected as a mark under this section**...."

(emphasis added).

In cases involving surnames, as in the instant case, the Eleventh Circuit requires that a

Plaintiff prove a name has acquired secondary meaning such that "the public identifies the name

with the producer as the source of the product." DE 36 at pp. 7-8 (citing *Conagra, Inc. v.

Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984)). In order to establish rights in a surname in the

Eleventh Circuit, court's consider (1) the length and manner of its use; (2) the nature and extent

of advertising and promotion; (3) the efforts made by plaintiff to promote a conscious connection

in the public's mind between the name and plaintiff's product or business; and (4) the extent to

which the public actually identifies the name with the plaintiff's product or venture. *Conagra*,

743 F.2d at 1513.

Plaintiff has the burden to demonstrate the factors described in *Conagra* to prove his

name has acquired secondary meaning as a mark such that "the name and business become

synonymous in the public mind and the secondary meaning submerges the primary meaning of

the name as a word identifying a person, in favor of its meaning as a word identifying that

business." *Tillery v. Leonard & Sciolla, LLP*, 437 F.Supp.2d 312, 321 (E.D. PA 2006) (citing *2

McCarthy on Trademarks and Unfair Competition*, Fourth Ed., § 13.3) (internal quotations

omitted).

To make his case, Plaintiff has provided his Curriculum Vitae ("CV") and three nearly

identical, self-serving conclusory affidavits. Cf. Exhibit 4, DE 19, Exhibit 7. This evidence is

insufficient to demonstrate the name Paul Tartell is a protected mark under the Lanham Act. *See

*Salle v. Meadows*, 2007 WL 4463920, Case No. 6:07-cv-1089-Orl-31DAB (M.D. Florida, December 17, 2007) (finding a self-serving affidavit insufficient to support a claim of ownership over a protectable mark in plaintiff's name). Further, a closer inspection of Plaintiff's CV and affidavit claims during the course of discovery have revealed that, contrary to Plaintiff's contention, his name is not well-known as a source indicator in any market and therefore he does not have protectable trademark rights in his name under the Lanham Act or Florida state unfair competition law. This lack of evidence will become more apparent when the court analyzes the *Conagra* factors.

  a. *Length of and Manner of Use*

In *Conagra*, the court found that the mark at issue had been prominently displayed on virtually all products for over 25 years. *Conagra*, 743 F.2d at 1513. Similarly, this Court found that it was likely Plaintiff would be able to prove that he had "used his name in South Florida to advertise his skill and ability as an ENT for nearly twenty years." DE 36 at 8. As discussed above though, Plaintiff has only proven that he was a solo practitioner for a year and a half and does not have any evidence that he promoted his name with his services during that time, other than some undocumented dozens of lectures before women's' clubs and the like for about a year until his name was "out there enough." UF 29.   Unsubstantiated testimony of few dozen talks to local groups twenty years ago, and then nothing more ever since, does not constitute a high degree of proof for secondary meaning then or now.

  Plaintiff admits that he does not pay to advertise or promote his services. UF75. Whenever Plaintiff's name was used, Plaintiff's name has been used along with Defendants' to promote his services as a practicing doctor, and since 2002 that use has been further limited to use under the prominent SOUTH FLORIDA SINUS & ALLERGY CENTER mark and associated SFSAC and nose logo. UF 71; UF 73. *Cf. Turner Greenberg Associates, Inc. v. C&C*

*Imports, Inc.*, 320 F.Supp.2d 1317, 1331 (S.D. Fl. 2004) (finding that Defendant had trademark rights in a surname when defendant's use of the mark for 20 years was uninterrupted and exclusive). Unlike in *Turner*, Plaintiff's short stint as a solo practitioner, for only a year and half, followed by subsuming his name as an employee physician under Dr. Maliner could not establish exclusive rights in his name alone. Other than the alleged dozens of talks in the first year, there is no evidence of any efforts to promote his name as mark prior to joining practice with Dr. Mandel. Since that time there is no evidence that Plaintiff's name was ever advertised on its own since the time he joined with Dr. Mandel and Plaintiff admits that he did not undertake any of the marketing during his 14 years working with Defendants. UF 73.

Plaintiff confuses reputation for trademark secondary meaning. Plaintiff argued to this Court that he is an expert in his field, widely known and has an excellent reputation in the medical community and therefore he has "clearly achieved secondary meaning." DE 16 at 9. Plaintiff wants to extrapolate his medical expertise into notoriety and acquired distinctiveness to analogize to the Plaintiff in *Donoghue v. IBC/USA Publications, Inc.* (See DE 16 at 8), in which the Plaintiff gained trademark rights through acquired distinctiveness due to <u>his frequent TV appearances, his ten books, and his participation in hundreds of seminars and conferences</u>. 886 F.Supp. 947, 948-49 (D. Mass. 1995). Plaintiff has made none of the efforts Donoghue did. Contrary to Plaintiff's implication, the fact that Donoghue was an expert did not create trademark rights in his name, but, instead, it allowed him to promote himself in order to acquire trademark rights in his name. *See Id.* at 953 (finding that due to Donoghue's efforts he "has become widely known" and "has become associated in the public mind with expertise" through his "numerous publications and determined self-promotion"). Plaintiff, unlike Donoghue, has not been able to provide evidence that demonstrates his own self-promotion of his name in South Florida since his arrival in 1994. Plaintiff has not undertaken self-promotion; he in fact appears

to disdain it.  Plaintiff's contention that he is an expert in his field without more is insufficient to prove acquired distinctiveness.

    *b.  The Nature and Extent of Advertising and Promotion*

    Plaintiff in *Conagra* spent $400,000 annually to promote its name to a worldwide audience and the marketing efforts were expressly directed to establishing the mark at issue in association with plaintiff's business. 743 F.2d at 113. In contrast, Plaintiff here has not provided any evidence of annual advertising expenditure or any express efforts to associate his name with his services prior to or since his association with Defendant. UF 75 (Dr. Tartell does not pay to advertise. He does not do paid marketing). Plaintiff has only provided that before his association with Defendant he wrote articles and performed lectures, and that he now works with a charitable foundation. UF 35-45; UF 80-82.   The articles and lectures were in academia, except the alleged one year of talks before charitable groups.

    As admitted by Plaintiff, he has not performed a lecture for a number of years, and his CV indicates that the last lecture he gave was academic and in 1997. UF 29; UF 41-43. Plaintiff also admits that he has not published an article since 1999, and again it was directed to academia. UF 44-45.   Plaintiff avers that his charitable association with the Crohn's & Colitis Foundation is current evidence of trademark use of his name. UF 80.  However, Plaintiff fails to appreciate that neither Plaintiff nor Defendants are in the business of charitable donations and to the extent Plaintiff associates with the specific charitable foundation this association should not be valued as trademark use with his services in his ENT medical practice. In fact, the Crohn's & Colitis Foundation benefits patients with Gastroenterological diseases and Plaintiff does not claim to treat these types of diseases. UF 81. Plaintiff has failed to establish that his charitable work with the Crohn's & Colitis Foundation amounts to trademark use of the medical services mark that Plaintiff claims to own. *See Thoroughbred Legends, LLC v. The Walt Disney Co.*, 2008 WL

616253 at *6 (N.D. Georgia, February 12, 2008) (finding that plaintiffs could not claim use of an alleged mark with a charitable foundation if the charitable foundation did not promote the same services as the alleged marks use). Plaintiff's admission that he does not market and does not pay to advertise and the fact that he has not written an article or given a lecture in at least the past 14 years is fatal to his claim.

      c. *The Efforts Made By Plaintiff To Promote A Conscious Connection In The Public's Mind Between The Name And Plaintiff's Product Or Business*

As explained above, Plaintiff has offered insufficient evidence to establish a high degree of proof of use of his name as a trademark.    But even more importantly, Plaintiff has yet to define a relevant market in which he is directing his efforts to promote his name as a trademark. *See Tana v. Dantanna's*, 611 F.3d 767, 776 (11th Cir. 2010) ("To achieve the status of a strong mark, plaintiff must demonstrate distinctiveness in the relevant market," quoting *Brennan's, Inc. v. Brennan's Rest, L.L.C.*, 360 F.3d 125, 132 (2nd Cir. 2004)).   Plaintiff, who carries the burden, defines his market in which his name operates as a trademark value as national, yet he has not produced one piece of evidence of any effort to promote the Tartell mark throughout the United States. UF 83-86.   Plaintiff further cannot explain if his promotional efforts are directed to other doctors for referrals or directly to patients or both. Compare UF 50 and UF 87; *see also e.g., Atlanta Allergy and Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta, LLC*, 685 F.Supp.2d 1360, 1373-74 (N.D. Georgia 2010) (discussing that the relevant market can include distributors and ultimate purchasers). The *Atlanta Allergy* case similarly involves promotion of medical services except that the plaintiff in *Atlanta Allergy* made a substantial effort to promote a connection between its name and its services. In *Atlanta Allergy*, the court found that the plaintiff made substantial efforts to promote itself and the services it provided partly because plaintiff had hired a consultant who met with a number of medical providers on behalf of the plaintiff. *Id.* at

1369-70. The *Atlanta Allergy* court further found that plaintiff conducted community outreach and received media coverage specific to its "allergy and asthma services, its medical research and its physicians." *Id.* In contrast, Plaintiff in the instant case has only offered evidence that he wrote articles and performed lectures in the 1980's and early 1990's and he is unable to point to any evidence that this work was designed to promote a conscious connection in the public's mind between his name and his services.

For example, Plaintiff admits that the articles he wrote during his tenure in academia were not necessarily read by everyday practitioners. UF 49. Plaintiff also admitted that the average consuming public would not read the articles he had written in the 80's and 90's as they would not be able to understand the "fairly technical" articles he authored. UF 50. According to Plaintiff, he does not spend money on advertising, nor does he market at all as described in section b above. UF 75. Further, during the 14-year period of working with Defendants, Plaintiff never marketed or advertised his name in regards to medicine separate from Dr. Mandel or the practice. UF 75. The only other evidence of efforts he undertakes is his work with the Crohn's and Colitis Foundation which does not support a connection between his name and his services as the Foundation is directed to gastroenterological diseases and not the services Plaintiff purports to perform. *See* section b above and UF 80-82.

Also telling is Plaintiff's lack of effort to promote himself after the split with Defendants. If the Tartell name was widely known, it would stand to reason that he would emphasize and promote that successful brand.  So it comes as shock that he has almost exclusively has continued to utilize the SOUTH FLORIDA SINUS AND ALLERGY CENTER name and associated SFSAC and Nose Logo in the limited advertising that he does undertake—yellow page ads and office front signage.  UF 74-77.  Further, Plaintiff admits that he does not pay to market or advertise himself. UF 75.  In fact, Plaintiff characterizes his advertising as "more of an

intimate personal type of nature." Exhibit 5, Tartell Dep. 74:15-18; yet he makes no effort to quantify or otherwise evidence this intimate personal type of nature. It even took Plaintiff more than 8 months after the split to look into registering his own name as a Domain Name. Exhibit 5, Tartell Dep. 48:16-20. None of these actions suggest Plaintiff makes an effort promoting his name as a trademark, much less to a level to provide a high degree of proof of secondary meaning.

d.    The Extent To Which The Public Actually Identifies The Name With The Plaintiff's Product Or Venture

Plaintiff has not provided sufficient evidence to demonstrate that the public identifies his name with his services. Plaintiff's only evidence that the public actually identifies his name with his services are two affidavits from colleagues. UF 87. As discussed above, this evidence should little or no weight. *See Salle v. Meadows*, 2007 WL 4463920, Case No. 6:07-cv-1089-Orl-31DAB (M.D. Florida, December 17, 2007) (finding a self-serving affidavit insufficient to support a claim of ownership over a protectable mark in plaintiff's name); *Vital Pharmaceuticals, Inc. v. American Body Bldg. Products, LLC*, 511 Fsupp.2d 1303, 1312 (S.D. FL 2007) ("I cannot accept testimony of only two individuals as sufficient evidence of secondary meaning:); *see also Tana v. Dantanna's*, 611 F.3d 767, 777 (11th Cir. 2010) ("Moreover, the two affidavits submitted by Plaintiff as evidence of the national notoriety of his restaurant – one authored by Plaintiff himself and the other by his attorney – make only generalized self-serving statements as to Plaintiff's reputation and add no material evidence to the record that is relevant to the secondary-meaning inquiry").

The declaration testimony of these two doctors is virtually identical in language to Dr. Tartell's declaration and his complaint, suggesting that these declarations are a cut and paste by Plaintiff's counsel.  Cf. DE 1, DE 17, DE 19 and Exhibit 7.

Moreover, the declarations provide no basis for the doctors' qualifications to opine on secondary meaning and provide no reliable underlying surveys or other studies to support the opinions.  The doctors' testimony is directed to reputation, which might be probative of value for damages purposes but is not probative of secondary meaning or that his name is "well known" for which they are not qualified to opine.  A person may enjoy a great reputation among those who know him but not be well known in a commercial sense to have secondary meaning as a mark among the consumer public.  Conversely, a person's name may be well-known to have secondary meaning as a mark to the consuming public but suffer a bad reputation, as the celebrity cook Paula Dean has recently experienced.  The anecdotal opinions of two doctors that Tartell's name has secondary meaning is unreliable, inadmissible and should be given no weight.

Also telling is the lack of survey evidence provided by Plaintiff. UF 86. "Appeal courts have held that survey evidence 'is the most direct and persuasive evidence to establish secondary meaning." *Vital Pharmaceuticals*, 511 F.Supp.2d at 1311 (quoting *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999)). In *Conagra*, the court determined that testimony evidencing market surveys, independent broker testimony and testimony by Defendant acknowledging the wide recognition of the name in the industry all led to a finding that the consuming public associated the name with the products and that the name had acquired secondary meaning. Nowhere has Plaintiff indicated the consuming public associates his name with his services like in *Conagra*. Plaintiff has failed to offer any such testimony in support of his position and this court must find the evidence provided insufficient to establish acquired secondary meaning and thus Plaintiff has no trademark rights in his name.

      e.     *Plaintiff Has Failed To Demonstrate Acquired Distinctiveness In His Name*

Plaintiff's use of his name is similar to the plaintiff in *Tillery v. Leonard & Sciolla, LLP*, 437 F.Supp.2d 312 (E.D. Penn. 2006).    In *Tillery*, the plaintiff could only prove that he promoted his name along with the name of his law firm. *Id.* at 321.   The plaintiff was unable to provide evidence that he commanded a large share of the market, or that he made substantial efforts to advertise his own legal services separately from the law firm. *Id.* The *Tillery* court even suggested that referral by others was not indicative of a well-known name. *Id.* ("[Plaintiff] generated only a few new client matters in the last 16 months of his association and those were, almost without exception, from referrals by others. Evidently Tillery's name was not so well known that strangers sought his services"). Like in *Tillery*, Plaintiff here has used his name along with Defendants almost exclusively since he joined private practice in 1994. Plaintiff has admitted that he went into solo practice for only a year and a half before joining up with Dr. Robert Maliner, which immediately preceded his partnership with Defendants. UF 51-54.. Plaintiff has failed to produce evidence that he commanded a large share of the medical services market, or more narrowly the ENT medical services market. In fact, Plaintiff has provided no evidence of the size or success of his practice since the split and whether it is attributable to his name or the continued use of the LLC brand SOUTH FLORIDA SINUS & ALLERGY CENTER and its SFSAC and Nose Logo.  Again, Plaintiff has admitted that he does not pay to market or promote his own services. UF 75.

Merely practicing medicine with his name is not enough to meet the high degree of proof of secondary meaning of the name as a mark.   The court in *Tillery* found that "recognition of individual lawyers' names as trademarks without a **strong showing** of secondary meaning could hinder the creation of new law firms (since, unlike other businesses, law firms are traditionally identified by personal names and not fanciful trade names) and the ability of individuals to

practice law in their chosen field without changing their names." *Tillery*, 437 F.Supp.2d at 322 (emphasis added). The court noted that although an individual does not have an absolute right to use his name in business "there is a difference between forcing a junior user to give his business a different name than his own and making a professional choose between changing his name or his field of practice." *Id.* at FN 5. To provide an apt example, surnames such as CALVIN KLEIN or TOMMY HILFIGER have trademark meaning for clothing or other accessories, and those brands likely have strong trademark rights against a Calvin Klein or Tommy Hilfiger attempting to enter the same market. On the other hand, even Dr. Sanjay Gupta would find it difficult to claim absolute trademark rights against another Sanjay Gupta who also happens to be a doctor. There is no evidence that the name Paul Tartell invokes any trademark meaning, let alone the substantial secondary meaning a doctor like Sanjay Gupta has acquired through use of his own name. Like in *Tillery*, this court should find that just practicing as a doctor does not confer trademark rights in a name.

Plaintiff has only been able to submit his CV and two self-serving affidavits as evidence that he is so well-known that his name and business have become synonymous in the public mind. Plaintiff admits that he does not advertise or pay for any promotions. Plaintiff further admits that, besides his charitable work, the only promotion of his name that he has undertaken, separate and apart from his connection with Defendants, is through various articles and lectures that dated in the 1980's and early 1990's while he was working in academia. As noted above, any use of his name with his charitable work should not be afforded any trademark value. This dearth of evidence is insufficient to establish the strong showing necessary to prove acquired secondary meaning in medical profession trademark cases and no reasonable jury can find that a substantial portion of the consuming public associates Paul Tartell with the medical services he offers. Plaintiff has made no effort to evidence this consumer association even for South Florida,

17

and certainly no basis exists for the entire United States, that Plaintiff states is the relevant market.  Plaintiff wants to rely on the occasional use of his name in advertising during the LLC years, but acquiesced to the dominance of the SOUTH FLORIDA SINUS & ALLERGY CENTER branding ultimately to the exclusion of his name, and yet, continued and still continues to this day to use this LLC branding in his current practice.  This behavior does not evidence to a high degree of proof an effort to promote his name as a mark and the consuming public's recognition of his name as a mark for ENT medical services.

**C.    Unauthorized Publication of Name and Likeness Under Florida Law**

This court initially rejected Plaintiff's theory that Florida Statute § 540.08 applied to metatags and adwords and found that neither the court nor the parties were able to locate precedent that this section applies to metatags and adwords. DE 36 at 20. Plaintiff has not brought any new case law to Defendants' attention and Defendants have not found any new case law that would suggest otherwise.  Plaintiff has not provided evidence that a keyword triggers an ad demonstrating Plaintiff's name, and admits that he has no new facts beyond what was presented in the preliminary injunction motion (UF 100) and therefore the Court should maintain its finding that the statute does not apply to Plaintiff's theory that any alleged use by Defendants of Plaintiff's name in adwords or metatags is violative of the statute.

This Court also determined that any use of domain names displaying Plaintiff's name was likely in violation of the statute and therefore Plaintiff was likely to succeed on his claim that this type of use violated the statute.   The statute in the Court's view requires a visible display of the name by Defendants to the customers.  DE 36 at 20.  There is no evidence of a link of the Tartell domains to the sfsac.com and more importantly, Plaintiff has presented no evidence that a link would result in the domain name being displayed in the web browser.  Plaintiff contends that Defendants are "forwarding" the Tartell domains to sfsac.com.  In forwarding, the user types in

the domain name, but when the link page appears, its domain name (e.g. sfsac.com) is substituted and displayed in the browser's URL field.  Plaintiff has presented no evidence that the work Tartell is ever displayed commercially by any action of Defendants. Further, Plaintiff has no evidence that Defendants have ever used his name or likeness in any ad or otherwise displayed by Defendants since Plaintiff split with Defendants. UF 99. Therefore, Plaintiff has failed to provide sufficient evidence such that a reasonable jury could find that Defendants' published Plaintiff's name or likeness or used Plaintiff's name or likeness for any purposes of trade or for any commercial or advertising purpose and Plaintiff cannot prevail on this count.

**CONCLUSION**

For the foregoing reasons, Defendants request that this Court find that Plaintiff has failed to provide substantial evidence to support the high degree of proof for a finding of secondary meaning in his surname and that no reasonable jury can find that a substantial portion of the consuming public associates the name Paul Tartell with the medical services he offers and find for Defendants on summary judgment.   If the court denies this motion, Defendants reserve the right to demonstrate no ownership of a protectable mark at trial and to defend at trial the other elements that remain in dispute including no likelihood of confusion, no use of the domain names, no bad faith intent to profit, no damages and no basis for permanent injunction.

Dated:  October 11, 2013                Respectfully Submitted,

                                        /joseph w. bain/
                                        _____
                                        Joseph W. Bain (Florida Bar No. 860360)
                                        Jeffrey H. Kamenetsky (Florida Bar No. 114571)
                                        Novak Druce Connolly Bove + Quigg LLP
                                        525 Okeechobee Blvd., 15th Floor
                                        West Palm Beach, FL 33401
                                        Phone: (561) 847-7800
                                        Fax: (561) 847-7801
                                        joseph.bain@novakdruce.com
                                        jeff.kamenetsky@novakdruce.com

                                        *Attorneys for Defendants*

## Certificate of Service

I HEREBY CERTIFY that on October 11, 2013, the foregoing document was

electronically filed with the Clerk of the Court using CM/ECF and was also served upon all

counsel of record or pro se parties identified on the attached Service List either through CM/ECF

or some other authorized manner.


/joseph w. bain/
Joseph W. Bain


## SERVICE LIST

*Paul B. Tartell, M.D. v. South Florida Sinus and Allergy Center, Inc., et al.*
Case No.: 12-61853-CV-Dimitrouleas/Snow
United States District Court, Southern District of Florida


Matthew S. Nelles, Esq.
Tara Ravi, Esq.
BROAD AND CASSEL
100 SE 3rd Avenue, Suite 2700
Fort Lauderdale, FL 33394
Phone: 954-764-7060
Fax: 954-713-0981
mnelles@broadandcassel.com
travi@broadandcassel.com

Tracy Newmark, Esq.
The Newmark Law Firm, PA.
2650 West State Road 84, Suite 101-C
Fort Lauderdale, FL 33312
Phone: 954-926-2460
tracy@newmarklaw.com