UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 12-61853-cv-Dimitrouleas / Snow

PAUL B. TARTELL, M.D.,

    Plaintiff,
v.

SOUTH FLORIDA SINUS AND ALLERGY
CENTER, INC., et al.,

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND COSTS (ENTITLEMENT ONLY)**

On April 15, 2014, the Court entered an Amended Final Judgment, finding in favor of Plaintiff, Paul B. Tartell, M.D., and against all Defendants on Counts I, II, IV and V of the Amended Complaint (DE# 130), and awarding statutory damages against all Defendants (D.E. # 151) (Amended Final Judgment).  On April 24, 2014, the Court granted Plaintiff's Motion to Bifurcate attorneys' fees entitlement from amount.  (D.E. # 156).  Plaintiff now seeks an award of attorneys' fees against all Defendants under 15 U.S.C. 1117(a), which is applicable to Counts I and II.  The statute provides, in pertinent part, "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party."  Having established liability against all Defendants under 4 out of the 5 claims in the Amended Complaint, Plaintiff is the "prevailing party."  We show below why this is an exceptional case, warranting an order entitling Plaintiff to recover his reasonable attorneys' fees expended in this case.

### Defendant Mandel's Online Mischief

On February 11, 2014, the Court entered its Findings of Fact and Conclusions of Law ("FOF," D.E. # 140). Among other things, the Court found that Defendant Mandel had registered six Tartell Domains, and had "organized for five (5) of the six (6) Tartell Domains to domain forward to sfsac.com, a website controlled by Dr. Mandel…."[1] FOF, ¶ 8. Notably, the Court found that "[t]he forwarding was not automatically done by GoDaddy; rather, Dr. Mandel affirmatively effected the forwarding." FOF, ¶ 8.

During the same time as the domain forwarding, Defendant Mandel also purchased Google Ad Words, including the words "Paul Tartell" and "Paul Tartell, MD." FOF, ¶ 11. By purchasing the Ad Words, Defendant Mandel "caused sfsac.com to appear as an advertisement whenever an internet user performed a Google search for one of the Ad Words." *Id*. Because of the Ad Word Campaign, a Google search for "Paul Tartell" as of the time of the trial would elicit among the search results an advertised link to sfsac.com. *Id*.

### The Court's Findings of Defendant Mandel's Bad Faith

As discussed in greater detail below, an "exceptional" case under 15 U.S.C. § 1117(a) is one which is "malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists." *Burger King v. Pilgrim's Pride Corp.,* 15 F.3d 166, 168 (11th Cir.1994). With this standard in mind, it is significant, for purposes of this Motion, that the Court specifically found and concluded that Defendant Mandel's online mischief was done in bad faith. Critically, the Court determined:

> Dr. Mandel purchased the Ad Words and Tartell Domains and implemented domain forwarding with a **bad faith intent to profit**

---

[1] As reflected in the Amended Final Judgment, Defendant Mandel acted on behalf of himself and his corporate entities. Thus, references to Defendant Mandel's misconduct in this Motion are imputed to both himself and all of the other Defendants.

2

>by diverting Dr. Tartell's prospective or current patients to Dr. Mandel's practice.  Dr. Mandel's bad faith is exhibited by the fact that he purchased and forwarded *multiple* domain names that were confusingly similar, if not identical, to Dr. Tartell's name and that the only conceivable reason for this conduct was to divert consumers **in a clandestine manner** from, and to the detriment of, Dr. Tartell for the benefit of Dr. Mandel.  **Dr. Mandel's testimony** that he was trying to collect trailing receivables **was not credible**.

FOF, ¶ 13 (emphasis added).  The Court later reiterated that Dr. Mandel "registered and used the Tartell Domains with a bad faith intent to profit." *Id*., ¶ 28.  And "this action continued all the way through trial because Dr. Mandel **refused to take responsibility for his antics**." *Id*., ¶ 31 (emphasis added).

<u>**Defendant Mandel's False Testimony Needlessly Prolonged and Substantially Drove Up the Costs of this Litigation**</u>

The Court found that Defendant Mandel needlessly extended this litigation because he refused to take responsibility for his antics. *Id*.  But the lengths to which Defendant Mandel went to hide his misconduct, and the substantial costs he caused Dr. Tartell to incur as a result, further support a finding that he acted in bad faith and with willful, deliberate and fraudulent misconduct.

At the Preliminary Injunction hearing held on January 11, 2013, Defendant Mandel first disclosed his ruse to deliberately conceal the extent of his mischief.  At the hearing, he was questioned about records produced the day before by Domains by Proxy, a GoDaddy affiliate, which established that he had registered the Tartell Domains.  **Exhibit A** (Transcript, page 124).  Unable to deny that he was the registrant of those domains, Defendant Mandel instead denied that he had ever linked the domains to sfsac.com, a website he controlled.  He instead spun a story, which he would proliferate throughout the entire litigation, that he registered the domains to collect "trailing receivables," but that he never linked the domains to his website:

3

> Q. Then tell me how it is that you're---the websites or the domain names that you purchased, PaulTartellMD.com and PaulTartell.com became linked to the websites of your website?
>
> A. [DR. MANDEL]: *I'm not aware that they did*.
>
> Q. You're not aware of that ever happening?
>
> A. Correct.
>
> Q. So, why did you purchase PaulTartellMD.com and PaulTartell.com?
>
> A. Well, what was going on in our other litigation at that time… is a problem that we encountered with our accounts receivable….
>
> [I]f we could do something to capture and make it easier for patients to --- when we sent out billings, to go to a website that would then funnel into a main website where they could pay online, it would make it easier. But we – we never ever—I never, ever did it because it was a thought that hit my head, and I did it, and I just never did anything with hit.

**Exhibit B**, Transcript, p. 126-127 (emphasis supplied).

> Q. You controlled the website that you linked it to, correct?
>
> A. *I didn't link anything*.
>
> Q. So, you heard Dr. Tartell testify, right, that he went on, and he typed in "PaulTartell.com" before we filed our motion for preliminary injunction, and it went to your website, South Florida Sinus and Allergy Center.
>
> A. I can't attest to what he said, *but I'm just telling you that I never linked it*.
>
> Q. And you're testifying under oath that that never occurred? Is that what you're saying, that never occurred?
>
> A. *That is what I'm saying*.
>
> …

4

> *I'm telling you that I have no recollection of ever linking those websites.*

**Exhibit C,** Transcript, p. 128, (emphasis supplied).

Defendant Mandel repeated this story months later at his August 27, 2013 deposition. *See* **Composite Exhibit D** Mandel Depo., p. 131-34; 131:2-16 ("I registered the domains, forgot about it, never did anything about it"); 132:9-10 (testifying that he "did nothing" with the Tartell Domains); 133:6-13 (with respect to whether typing in the Tartell Domains automatically linked the user to sfsac.com, "That is what you say. That is not, in fact, what happened"); 134:10-11 ("I have the personal knowledge that I did not cause any linkage"); 134:14-15 ("I did not link them").

Had Defendant Mandel simply admitted what appeared obvious to everyone, that he had linked the Tartell Domains to sfsac.com, this would have obviated the need for much of this litigation. But because he continued to engage in deception, and because his lawyers repeatedly argued in papers filed with this Court that damages should be denied because there was no evidence of a link, Dr. Tartell was forced to undertake considerable discovery to uncover that evidence.

Most notably, Dr. Tartell was forced to conduct discovery of GoDaddy, the registrar used by Defendant Mandel to register the Tartell Domains. According to GoDaddy's own records, which were quoted in Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (D.E. # 90) and introduced at trial, 5 out of the 6 cybersquatted Tartell Domains were domain forwarded. Specifically, GD 000158 and 000159, which reflect activity conducted by Defendant Mandel on March 5, 2012, the day he registered the cybersquatted Tartell Domains,

5

show that he implemented "Domain forwarding update" for five out of the six Tartell Domains.[2]

At trial, GoDaddy paralegal, Ms. Keena Willis, testified (by deposition) that Defendant Mandel domain forwarded the cybersquatted Tartell Domains so that they would "point" to a different website:

> Q. In this case, do GoDaddy's records reflect that on March 5, 2012, GoDaddy's customer Lee Mandel set domain name forwarding for five out of the six Tartell domains?
>
> A. [MS. WILLIS]: Yes, the document indicates that domain forwarding was updated for five out of the six domain names.
>
> Q. Does that mean that as of March 5, 2012, if Internet users typed one of the Tartell domain names into a URL field in their Internet browser, they would be automatically redirected to a different website?
>
> A. If it was directed to a different website, yes, the person going to those sites would be forwarded on.
>
> …
>
> If there was another website where they've asked it to be pointed, yes, it would be directed to that website.
>
> Q. So if another website had been set up then as a result of domain name forwarding, if someone typed in one of the Tartell domain names into the URL field in their Internet browser, would they automatically be directed to that other website?
>
> A. Yes.

D.E.# 90, p. 4  (used at trial).

While one would have expected Defendant Mandel to have then ended his charade, when faced with this evidence, he continued to falsely assert that he never linked the Tartell Domains to sfsac.com.  Indeed, he retained an "expert" in computer forensics, Victor Johnson, to try to support his story.  But Mr. Johnson proved incapable of refuting

---

[2] For the Court's reference, these records are referenced on pages 3-4 of Plaintiff's Response to Defendant's Motion for Summary Judgment. (D.E. #90).

6

the obvious, and although Dr. Tartell spent thousands of dollars preparing for and deposing Mr. Johnson to challenge his "opinions" through *Daubert* briefings as well as retaining his own responsive expert (see D.E. # 103), Defendants did not even bother to call Mr. Johnson to testify at trial.[3]

By prolonging his "antics," even in the face of unequivocal evidence of his misconduct, Defendant Mandel needlessly dragged out this case and caused Dr. Tartell to incur tens of thousands of dollars disproving his fabrications.  It is this litigation misconduct, constituting bad faith and a deliberate and willful intention to deceive, that provides additional justification for an award of attorneys' fees to Plaintiff, Paul B. Tartell, M.D.

## Dr. Tartell is Entitled to an Award of Attorneys' Fees because Defendant Mandel engaged in bad faith and deliberate, willful and even fraudulent misconduct

The Eleventh Circuit has repeatedly held that an "exceptional" case is one which is "malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists." *Tiramisu Intern. LLC v. Clever Imports LLC,* 741 F. Supp. 2d 1279, 1294 (S.D. Fla. 2010) (citing *Welding Servs. v. Forman,* 301 Fed.Appx. 862 (11th Cir.2008); *Optimum Techs., Inc. v. Home Depot U.S.A., Inc.,* 217 Fed.Appx. 899, 903 (11th Cir.2007) ("An exceptional case is 'where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner.' "); *Burger King v. Pilgrim's Pride Corp.,* 15 F.3d 166, 168 (11th Cir.1994) (same). *See also Tracfone Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220, 1227 (S.D. Fla. 2012) (citing *Punch Clock, Inc. v. Smart Software Development,* 553 F.Supp.2d 1353, 1359 (S.D. Fla. 2008); *Burger*

---

[3] As set forth in Plaintiff's *Daubert* Motion, Mr. Johnson, who was shielded by Defendants' lawyers from even talking to Defendant Mandel, was ultimately unable to conclude whether or not the Tartell Domains linked to sfsac.com.  To his credit, Mr. Johnson testified, "I can't say that [the link] did or did not exist….So any comment like that would be pure speculation as to whether it existed or not." See D.E. # 103, p. 2.

7

*King Corp. v. Pilgrim's Pride Corp.,* 15 F.3d 166, 168 (11th Cir.1994)).

Bad faith is an element of a successful claim under the Anti-cybersquatting Protection Act ("ACPA"). Thus, in *PetMed Express v. MedPets.Com, Inc.,* 336 F.Supp.2d 1213, 1220 (S.D. Fla. 2004), Judge Cohn found that a defendant who violated the ACPA "acted willfully in registering the domain names www.medpets.com and www.1888medpets.com" and thus awarded attorneys' fees under 15 U.S.C. § 1117. *Id.* at 1221.

In addition, where a defendant demonstrates a "disregard for legal proceedings," courts have routinely awarded plaintiffs' attorneys fees. *See, e.g., Tracfone, supra*, citing, *inter alia*, *PetMed Express, supra,* at 1220. And where a defendant causes plaintiff to incur unnecessary legal fees and is dishonest during the course of litigation, attorneys' fees should be awarded. *See Tiramisu, supra* ("During the course of the lawsuit, Tiramisu was forced to file motions to compel discovery, incurring additional unnecessary expense. Moreover, Clever Imports continued to distribute the infringing product even after the initiation of the lawsuit, even after it had stated in discovery responses that it had ceased such behavior").

It has also been recognized that "fraudulent conduct in the course of conducting trademark litigation permits a finding that a case is 'exceptional' for purposes of an attorney's fee award under the Lanham Act." *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc*., 317 F.3d 209, 222 (2d Cir. 2003) (defendant presented fraudulent documents during litigation).

In this case, Defendant Mandel engaged in bad faith, as well as willful, deliberate and fraudulent misconduct. Specifically, Defendant Mandel:

1. purchased the Ad Words and Tartell Domains and implemented domain forwarding with a bad faith intent to profit by diverting Dr. Tartell's prospective or current patients to Dr. Mandel's practice (FOF, ¶ 13);

8

2. purchased and forwarded *multiple* domain names that were confusingly similar, if not identical, to Dr. Tartell's name; the only conceivable reason for this conduct was to divert consumers in a clandestine manner from, and to the detriment of, Dr. Tartell for the benefit of Dr. Mandel (FOF, ¶ 13);
3. gave "not credible" testimony that he was trying to collect trailing receivables (FOF, ¶ 13);
4. registered and used the Tartell Domains with a bad faith intent to profit (FOF, ¶ 28);
5. refused to take responsibility for his antics, causing this case to continue all the way through trial (FOF, ¶ 31);
6. evinced a "disregard for legal proceedings" by testifying falsely at the preliminary injunction hearing and again at his deposition that he did not create a link between the Tartell Domains and sfsac.com (*see Tracfone, supra; PetMed Express, supra)*; and
7. as a result of his antics and false testimony, caused Dr. Tartell to incur unnecessary legal fees, including GoDaddy and expert discovery and motions related thereto (*see Tiramisu, supra*).

Therefore, the Court should find that this is an exceptional case under 15 U.S.C. § 1117 and award Dr. Tartell, as the prevailing party, his attorneys' fees and costs.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court find that this is an exceptional case and award Dr. Tartell, as the prevailing party, his attorneys' fees and costs under 15 U.S.C. § 1117(a).

Dated:  May 14, 2014                                        Respectfully submitted,

                                                               Matthew S. Nelles
Florida Bar No. 009245
mnelles@broadandcassel.com
Adam G. Rabinowitz
Florida Bar No. 177962
arabinowitz@broadandcassel.com
**BROAD AND CASSEL**
One Financial Plaza, Suite 2700
Fort Lauderdale, Florida  33394
Telephone: (954) 764-7060
Facsimile: (954) 761-8135


By: /s/ Matthew S. Nelles
     MATTHEW S. NELLES
     Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 14, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel/parties of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Matthew S. Nelles
MATTHEW S. NELLES